### AFFIDAVIT OF SPECIAL AGENT ANDREW D. NAMBU

I, Andrew D. Nambu, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI"), and have been so employed since 1999. Since in or about 2003, I have been assigned to a Counter Terrorism Squad and the Joint Terrorism Task Force in the FBI's Boston Field Office, and, since 2010, to the same duties in the FBI's Worcester Resident Agency. From 1999 to 2003, I was assigned to the Health Care Fraud Squad of the Boston Field Office. During my employment at the FBI, I have investigated federal criminal violations related to international terrorism, health care fraud, money laundering, fraud and economic/white collar crimes, among others. I have submitted affidavits in support of federal search warrants and criminal complaints and have participated in the execution of numerous search warrants.

2. I am currently investigating ASHOKKUMAR PATEL, a/k/a "Andy Patel" ("PATEL"), for contempt, in violation of Title 18, United States Code, Section 401.

3. This affidavit is being submitted in support of an application for a warrant to search electronic equipment, specifically two mobile phones seized from PATEL during his apprehension by Royal Canadian Mounted Police on October 15, 2020 (collectively, "the equipment") that are in the possession of law enforcement investigators, as more fully described in Attachment A. The equipment is described as (1) a black Apple iPhone and (2) a black Samsung Galaxy A6, Serial number RF8K83DN47H, Model number SM-A600A. There is probable cause to believe that the equipment contains evidence, fruits, and instrumentalities of the crime listed above, as described in Attachment B.

4. The facts in this affidavit come from my personal observations and review of records, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested search warrant and does not set forth all of my knowledge about this matter.

**Probable Cause to Believe That a Federal Crime Was Committed**

5. I previously investigated PATEL for, *inter alia*, violations of 18 U.S.C. § 1343 (Wire Fraud), 18 U.S.C. § 1349 (Conspiracy to Commit Wire Fraud), and 18 U.S.C. § 1957 (Money Laundering) based on a series of events that began in or around December 2013 and continued at least until in or around October 2014.

6. On June 28, 2017, this Court issued a criminal complaint and arrest warrant charging PATEL with Wire Fraud, in violation of Title 18, United States Code, Section 1343, Conspiracy to Commit Wire Fraud, in violation of Title 18, United States Code, Section 1349; and Money Laundering, in violation of Title 18, United States Code, Section 1957. *See* 18-cr-40027-TSH at D.4.

7. On or about June 30, 2017, PATEL was arrested on the criminal complaint and arrest warrant, and made his initial appearance in the Northern District of Illinois on that same day. *See* 17-cr-00445 N.D. Ill. D.7. PATEL was released subject to a Court order setting conditions of release that included, *inter alia*, that his travel was restricted to the Northern District of Illinois and the District of Massachusetts. *Id.*

8. On or about July 7, 2017, this Court conducted an initial appearance for PATEL in the District of Massachusetts. *See* 18-cr-40027 at D.10. The Court expressly adopted the previously issued Order Setting Conditions of Release, including the travel restriction referenced in the preceding paragraph. *Id.* at D. 10 and 13.

9. On or about August 21, 2017, the Court amended PATEL's conditions of release to enlarge his travel restrictions to the Northern and Central Districts of Illinois, the Eastern District of Wisconsin and the Northern District of Indiana for employment purposes. *Id.* at D. 18. Since that time, there have been limited instances where the Court has permitted PATEL to travel outside of his travel restrictions for specifically limited duration and purpose. *See id.* at D. 26, 48, 57, 85, 91.

10. On or about June 14, 2018, PATEL was indicted by a federal grand jury sitting in Worcester, Massachusetts. *See id.* at D. 28. That indictment alleged the same criminal offenses previously charged by complaint.

11. On June 26, 2019, PATEL pleaded guilty to all charges contained in the indictment. *See id.* at D. 73.

12. On September 15, 2020, the district court sentenced PATEL to 40 months incarceration, followed by one year of supervised release. *See id.* at D. 108 and 110. The district court ordered that PATEL self-surrender on or before November 3, 2020 to the facility designated by the Bureau of Prisons. *See id.* at D. 110.

13. At the request of the Pre-Trial Services Department in the Northern District of Illinois, who had been supervising PATEL during his pre-trial release, the pretrial supervision of his release conditions was terminated, although his remaining release conditions (including travel restrictions) remained in effect and were unchanged. *See id.*

14. The Court further scheduled a restitution hearing for October 21, 2020. *See id.* at D. 112.

15. On October 15, 2020, at approximately 10:45 p.m. PDT, Canadian Border Service Agency ("CBSA") arrived at the Pacific Highway Port of Entry in Blaine, Washington and

advised United States Customs and Border Protection ("CBP") that PATEL was being transported back to the United States after having entered Canada without inspection at approximately 8:30 p.m. PDT at an approximate location of Zero Avenue and Mount Lehman Road in Canada.

16. Based upon a google map search, I have learned that Zero Avenue is the southern most road running in the east-west direction in the Canada,[1] and Mount Lehman Road runs in a north-south direction in Canada. In the vicinity of the two areas on a google map search, it appears that there are agricultural fields. It also appears from the google map search that Abbotsford International Airport is located in Canada approximately 1 mile north of Zero Avenue.

17. CBP advised me of this event at approximately 1:40 a.m. EST on October 16, 2020. CBP further advised that PATEL was encountered by the Royal Canadian Mounted Police ("RCMP") jumping a ditch in an area of blueberry fields and turned over to CBSA. According to CBP, there is a ditch between the Washington and Canadian border in the area where PATEL was encountered.

18. RCMP reported that a dark-skinned male had crossed the border and then jumped in berry patches. With the assistance of other law enforcement, PATEL was located hiding between "bramble and twigs" approximately 100 feet north of a dirt access road. RCMP had to crawl through the berry patch to locate PATEL.

---

[1] I previously submitted an Affidavit in support of a criminal complaint charging PATEL with contempt, in violation of 18 U.S.C. § 401. I erroneously described Zero Road as "the northern most road running in the east-west direction in the United States" but I have since discovered that Zero Road runs in the east-west direction in Canada.

19. PATEL initially would not comply with commands from RCMP, resulting in RCMP forcibly restraining PATEL to handcuff him. Once handcuffed and brought to his feet, RCMP noticed a black smartphone on the ground ringing from WhatsApp identified by the name Nina or Nino.

20. According to CBP, PATEL had $2,000 in U.S. currency and another cell phone on his person when he was apprehended. He did not possess any luggage or duffle bags.

21. After PATEL was taken into custody, FBI agents interviewed his wife, Himani Patel, at their home in Bartlett, Illinois. Mrs. Patel advised that PATEL left their residence on or about October 2, 2020 with a friend who picked him up in a vehicle. PATEL advised his wife that he was going backpacking with friends in either Tennessee or North Carolina before he had to report to prison. In reviewing the docket for PATEL's underlying fraud case, 18-cr-40027-TSH, I note that there was no motion filed with the Court requesting permission to travel to Tennessee or North Carolina during this time period.

22. According to Mrs. Patel, PATEL left his car at their residence in Bartlett, Illinois. Mrs. Patel reported that she tried to call PATEL on his cell phone, 773-791-0934, but her calls immediately went to voicemail. Mrs. Patel reported she had not spoken to PATEL since he left the residence on or about October 2, 2020.

23. Based upon the above facts, I applied for and obtained a criminal complaint charging PATEL with contempt. 20-mj-4243-DHH.

### Investigators' Possession of the Equipment

24. The computer equipment is currently in the possession of the FBI, and is being stored at its facilities, as described in <u>Attachment A</u>. RCMP provided the equipment to CBP, who in turn, provided the equipment to the FBI.

**Probable Cause to Believe That The Equipment
Contains Evidence, Fruits, And Instrumentalities**

25.  From my training and experience, I am aware that individuals sometimes utilize the assistance of others in trying to illegally cross international borders, either for planning purposes or for execution.  In addition, based upon my investigation of PATEL for his underlying fraud crimes, I am aware that PATEL communicated with his co-conspirators in the fraud conspiracy using his cell phone, and in particular the cell phone applications WhatsApp and Viber.  That PATEL had two cell phones in his possession at the time of his apprehension in Canada, including that one of the phones was ringing from the WhatsApp application at the time he crossed the border, suggests that PATEL may have been in communication with others to assist him in effectuating his continued flight from prosecution.  Due to PATEL's lack of personal transportation and personal items, I submit that there is probable cause to believe that he would have needed assistance in arranging transportation, lodging, and logistical assistance after crossing into Canada, and that he would have used the cell phones to communicate with others about such assistance.  Accordingly, I submit that there is probable cause to believe that the equipment contains evidence, fruits, and/or instrumentalities of a crime.

26.  As discussed above, the equipment is currently being stored by investigators at their facilities as described in Attachment A.  From my training and experience and the training and experience of law enforcement personnel who routinely handle this equipment, I understand that it has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as the items were when it first came into the investigators' possession.

27.     From my training, experience, and information provided to me by other agents, I am aware that individuals frequently use computer equipment to carry out, communicate about, and store records regarding their daily activities. These tasks are frequently accomplished through sending and receiving e-mail, instant messages, and other forms of phone or internet based messages; scheduling activities; keeping a calendar of activities; arranging travel; purchasing items; searching for information including information regarding travel and activities; arranging for travel, accessing personal accounts including banking information; paying for items; and creating and storing images and videos of their movements and activities.

28.     Based on my training, experience, and information provided by other law enforcement officers, I know that many smartphones (which are included in Attachment B's definition of "hardware") can now function essentially as small computers. Apple iPhones and Samsung Galaxy phones, such as PATEL's phones that were seized at the time he was taken into custody in Canada, are a type of smartphone. Smartphones have capabilities that include serving as a wireless telephone, digital camera, portable media player, GPS navigation device, sending and receiving text messages and e-mails, and storing a vast range and amount of electronic data. Examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

29.     From my training, experience, and information provided to me by other agents, I am aware that individuals commonly store records of the type described in Attachment B in mobile phones, computer hardware, computer software, and storage media.

30.     Based on my knowledge, training, experience, and information provided to me by other agents, I know that data can often be recovered months or even years after it has been written, downloaded, saved, deleted, or viewed locally or over the Internet. This is true because:

a. Electronic files that have been downloaded to a storage medium can be stored for years at little or no cost. Furthermore, when users replace their electronic equipment, they can easily transfer the data from their old device to a new one.

b. Even after files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a device, the data contained in the file often does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data, which might not occur for long periods of time. In addition, the device's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c. Wholly apart from user-generated files, electronic storage media often contains electronic evidence of how the device has been used, what it has been used for, and who has used it. This evidence can take the form of operating system configurations, artifacts from operating system or application operation; file system data structures, and virtual memory "swap" or paging files. It is technically possible to delete this information, but users typically do not erase or delete this evidence because special software is typically required for that task.

d. Similarly, files that have been viewed over the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache." The browser often maintains a fixed amount of hard drive space devoted to these files, and the files are overwritten only as they are replaced with more recently viewed Internet pages or if a user takes steps to delete them.

REMAINDER OF PAGE INTENTIONALLY LEFT BLANK

## CONCLUSION

31. Based on the information described above, I have probable cause to believe that PATEL has violated 18 U.S.C. § 401.

32. Based on the information described above, I also have probable cause to believe that evidence, fruits, and instrumentalities of these crimes, as described in <u>Attachment B</u>, are contained within the equipment described in <u>Attachment A</u>.

Sworn to under the pains and penalties of perjury,

Respectfully submitted,

_____
ANDREW D. NAMBU
Special Agent
FEDERAL BUREAU OF INVESTIGATION

Sworn to via telephone in accordance with Federal Rule of Criminal Procedure 4.1 on November  17 , 2020:    3:33 P.M.

_____
HONORABLE DAVID H. HENNESSY
UNITED STATES MAGISTRATE JUDGE

-